# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**184**

**CA 13-01101**

PRESENT: CENTRA, J.P., PERADOTTO, LINDLEY, SCONIERS, AND WHALEN, JJ.

---

MARY T. HELTZ, PLAINTIFF-APPELLANT,

V                                                                  MEMORANDUM AND ORDER

BRUCE S. BARRATT AND ERIE LOGISTICS, LLC,
DEFENDANTS-RESPONDENTS.
(APPEAL NO. 1.)

---

PERSONIUS MELBER LLP, BUFFALO (SCOTT R. HAPEMAN OF COUNSEL), FOR
PLAINTIFF-APPELLANT.

BARTH SULLIVAN BEHR, BUFFALO (ANDREW J. KOWALEWSKI OF COUNSEL), FOR
DEFENDANTS-RESPONDENTS.

-----------------------------------------------------------------------------------------------

    Appeal from an order of the Supreme Court, Erie County (John M.
Curran, J.), entered October 16, 2012 in a personal injury action.
The order granted defendants' motion for summary judgment dismissing
the first amended complaint.

    It is hereby ORDERED that the order so appealed from is affirmed
without costs.

    Memorandum:  Plaintiff commenced this negligence action seeking
damages for injuries she sustained when the vehicle in which she was a
passenger, which was operated by her husband, was struck by a truck
operated by Bruce S. Barratt (defendant) and owned by defendant Erie
Logistics, LLC.  On the evening in question, plaintiff's husband
stopped his vehicle at a stop sign on East Centerville Road where it
intersects with Route 243 in Rushford.  Defendant was operating his
truck at slightly above the speed limit of 55 miles per hour on Route
243, with the right-of-way.  After coming to a stop, plaintiff's
husband moved forward a bit and then stopped again.  Not observing any
oncoming traffic, plaintiff's husband drove into the intersection,
where his vehicle was struck by defendant's truck.  There is no stop
sign or traffic control device for traffic on Route 243.  In appeal
No. 1, plaintiff appeals from an order granting defendants' motion for
summary judgment dismissing the first amended complaint and, in appeal
No. 2, she appeals from an order denying her motion for leave to
reargue and renew her opposition to defendants' motion.  With respect
to appeal No. 2, we dismiss the appeal from the order therein to the
extent that it denied leave to reargue (*see Empire Ins. Co. v Food
City*, 167 AD2d 983, 984), and we otherwise affirm the order in each
appeal.

"It is well settled that a driver who has the right-of-way is entitled to anticipate that drivers of other vehicles will obey the traffic laws requiring them to yield" (*Malbory v David Chevrolet Buick Pontiac, Inc.*, 108 AD3d 1109, 1110; *see* Vehicle and Traffic Law § 1142 [a]).  Nevertheless, "a driver cannot blindly and wantonly enter an intersection . . . but, rather, is bound to use such care to avoid [a] collision as an ordinarily prudent [motorist] would have used under the circumstances" (*Strasburg v Campbell*, 28 AD3d 1131, 1132 [internal quotation marks omitted]).

Here, we conclude with respect to the order in appeal No. 1 that defendants met their initial burden of establishing that defendant was operating his vehicle " 'in a lawful and prudent manner and that there was nothing [he] could have done to avoid the collision' " (*Daniels v Rumsey*, 111 AD3d 1408, 1410; *see Ithier v Harnden*, 13 AD3d 1204, 1205).  Defendant testified that he saw plaintiff's vehicle at the stop sign, braked as soon as he entered the intersection, and turned to the left "microseconds" after he braked.  Despite defendant's efforts to avoid the accident, his truck struck the rear of plaintiff's vehicle on the passenger's side.  In opposition to the motion, plaintiff failed to raise an issue of fact (*see generally Zuckerman v City of New York*, 49 NY2d 557, 562).  Contrary to plaintiff's contention, "the fact that [defendant] may have been driving at a speed in excess of five miles per hour over the posted speed limit . . . is inconsequential inasmuch as there is no indication that [defendant] could have avoided the accident even if [he] had been traveling at or below the posted speed limit" (*Daniels*, 111 AD3d at 1410).

We conclude with respect to the order in appeal No. 2 that Supreme Court properly denied that part of plaintiff's motion for leave to renew.  It is well settled that a motion for leave to renew must be "based upon new facts not offered on the prior motion that would change the prior determination," and "shall contain reasonable justification for the failure to present such facts on the prior motion" (CPLR 2221 [e] [2], [3]; *see Blazynski v A. Gareleck & Sons, Inc.*, 48 AD3d 1168, 1170, *lv denied* 11 NY3d 825).  Here, the only reason proffered by plaintiff for failing to submit her expert's affidavit in opposition to defendants' motion is that she believed that she had raised an issue of fact without it and that the court would therefore deny defendants' motion.  That is not a reasonable justification for the failure to present the affidavit on the initial motion.  As we have previously stated, a motion for leave to renew "is not a second chance freely given to parties who have not exercised due diligence in making their first factual presentation" (*Welch Foods v Wilson*, 247 AD2d 830, 831 [internal quotation marks omitted]; *see Deutsche Bank Natl. Trust Co. v Wilkins*, 97 AD3d 527, 528; *Tibbits v Verizon N.Y., Inc.*, 40 AD3d 1300, 1302-1303).

All concur except WHALEN, J., who dissents and votes to reverse in accordance with the following Memorandum:  I respectfully dissent in appeal No. 1 because this case does not involve a truly unavoidable accident for which the grant of summary judgment would be appropriate

(*see generally DeBrine v VanHarken*, 83 AD3d 1437, 1438).  I would therefore reverse the order in appeal No. 1, deny defendants' motion for summary judgment, and reinstate the first amended complaint.

Proximate cause is generally a question of fact for the jury (*see Prystajko v Western N.Y. Pub. Broadcasting Assn.*, 57 AD3d 1401, 1403), and " '[i]t cannot be said as a matter of law that [one] driver's conduct was the sole proximate cause of the accident simply because his approach into the intersection was regulated by a stop sign whereas no traffic control devices regulated [the other driver's] approach' " (*Nevarez v S.R.M. Mgt. Corp.*, 58 AD3d 295, 297).

Supreme Court relied upon *Rogers v Edelman* (79 AD3d 1803, 1804) and *Galvin v Zacholl* (302 AD2d 965, 966-967, *lv denied* 100 NY2d 512) in granting defendants' motion for summary judgment dismissing the first amended complaint but here, in contrast, the actions of the driver of the vehicle in which plaintiff was a passenger were not so sudden.  Unlike someone preparing to make a left turn across oncoming traffic in the absence of a traffic control device, or someone pulling into an intersection to make a left turn at a green light, here, Bruce S. Barratt (defendant) should have been alerted of a potential hazard based on the fact that the SUV in which plaintiff was a passenger accelerated from the stop sign and proceeded into the intersection.

This case is factually similar to *Nevarez* (58 AD3d at 296-298) and *Cooley v Urban* (1 AD3d 900, 900-901) in many important respects, and I see no reason why the outcome should be any different.  From the stop sign on East Centerville Road, there is an eight-foot shoulder followed by the single east and westbound lanes of Route 243 and then another shoulder.  There were no other cars on the road at the time of the accident.  As noted by the majority, neither plaintiff nor her husband ever saw defendant's tractor trailer, and plaintiff's husband looked both ways before gradually accelerating across the intersection.  Defendant first saw the SUV when he was between one eighth to one quarter of a mile from the intersection.  His tractor trailer's "black box report" indicates that defendant's speed was likely 64 miles per hour at that time while the speed limit on the road on which he was traveling was 55 miles per hour.  Defendant watched the SUV the whole way and, when he was "a couple hundred feet" away, saw the SUV accelerate from the stop sign in a standard fashion and enter the intersection.  At that point, "[a]ll [defendant] could do was apply the brakes in anticipation of [the SUV] possibly spotting [him] and stopping or keeping going."  Defendant turned to the left when he realized that a collision was unavoidable; the SUV had fully entered his lane and it appeared as though the SUV "was going to keep going and not spot [him] at all."  Defendant did not sound his horn, and his right front fender collided with the right rear quarter panel of the SUV.  The black box recorded that defendant applied his brakes one second before the collision; he was traveling at a speed of 58 miles per hour.

Because defendant observed that the SUV entered the intersection without appearing to notice defendant from a distance of 200 feet, and considering that the black box report contradicts defendant's

testimony that he first applied his brakes when he was 200 feet away, I conclude that there is a question of fact whether defendant used the requisite reasonable care when proceeding into the intersection and in attempting to avoid the collision (*see Dorr v Farnham*, 57 AD3d 1404, 1405-1406; *Cooley*, 1 AD3d at 900-901; *King v Washburn*, 273 AD2d 725, 726).

A difference in a matter of seconds, or perhaps less, could have prevented this accident.  The SUV had almost made it across the intersection and was in the westbound lane when the collision occurred.  Defendant saw the SUV accelerate from the stop sign despite his approach, yet did not take any evasive action until one second before impact.  Even so, defendant impacted only the panel behind the rear wheel of the SUV.  Had defendant been traveling at the speed limit, braked and/or veered sooner, the collision might have been completely avoided.  Considering the SUV's location at the time of impact and standard acceleration, and defendant's understanding that the SUV was oblivious to his approach, if defendant had sounded his horn upon noticing the SUV accelerate the accident might have been avoided.  Defendant testified that he could only apply his brakes in anticipation of the SUV possibly spotting him, but a trier of fact might disagree.

Questions of fact exist as to whether defendant should have been traveling slower, braked and veered sooner, and/or sounded his horn when he first observed the SUV enter the "intersection without appearing to slow down or to look in [defendant's] direction" (*King*, 273 AD2d at 726; *see Deshaies v Prudential Rochester Realty*, 302 AD2d 999, 1000).

Entered:  March 28, 2014                    Frances E. Cafarell
                                            Clerk of the Court